JEREMIAH A. WHALEN, APPELLEE, V. THOS. F. BREN-
NAN ET AL., APPELLANTS.

[FILED MARCH 9, 1892.]

1. **Referees:** BILL OF EXCEPTIONS. Where a cause is referred to a referee to take the testimony and make his findings therefrom, he is the proper party to sign a bill of exceptions containing the evidence taken on the trial.

2. ——: REPORT CONFIRMED BY AGREEMENT. Where all exceptions to the report are withdrawn and the report confirmed by consent, an objection that certain findings are not sustained by the evidence will not be considered.

3. ——: ——: REVIEW. Where the parties, by a written stipulation, agree that certain words may be withdrawn from the referee's report, the effect of which will be to admit that a certain sum is due one of the parties, the court will not review the evidence to determine whether or not such sum is due.

4. **Contracts:** PUBLIC WORKS: INTERFERENCE WITH COMPETITION. An agreement entered into by parties for the purpose of preventing competition in the letting of public contracts is void; and a like rule prevails where the necessary tendency or effect of the contract would be to stifle competition. To have this effect, however, it must appear that the intent, effect, or necessary tendency of the contract was to prevent or stifle competition. Otherwise, the contract will be sustained.

APPEAL from the district court for Douglas county. Heard below before WAKELEY, J.

*Brogan, Tunnicliff & Perley,* for appellants:

The purpose of the contract was to defeat competition, and whether such purpose was accomplished or not is immaterial. (*King v. Winants,* 71 N. Car., 469, also 73 Id., 563; *Gibbs v. Smith,* 115 Mass., 592; *Goldman v. Openheim,* 118 Ind., 95; *Gulick v. Bailey,* 10 N. J. L., 87; *Bradler v. Kingsley,* 43 N. Y., 537; *Richardson v. Crandall,* 48 Id., 362; *Hunter v. Pfeiffer,* 108 Ind., 200; *Capital Bank v. Huntoon,* 35 Kan., 590; *Gaston v. Drake,* 14

12

Nev., 181.)   The direct consideration for the withdrawal of the Brennans' bid was the furnishing of the stone for the city hall at a fixed price, and this vitiates the contract. (*Gould v. Kendall*, 15 Neb., 549; *King v. Winants*, 71 N. Car., 146; *Armstrong v. Toler*, 11 Wheaton [U. S.], 258; *State v. Cross*, 38 Kan., 696; *Everingham v. Meighan*, 55 Wis., 354; *Ray v. Mackin*, 100 Ill., 246; *Gulick v. Bailey*, 10 N. J. L., 87; *Wilbur v. How*, 8 Johnson [N. Y.], 444; *Pickering v. Cease*, 79 Ill., 328; *First Natl. Bank v. Packing Co.*, 66 Ia., 41; *North v. Phillips*, 89 Pa. St., 250; *Irwin v. Williar*, 110 U. S., 499; *Wilbur v. N. Y. Electric Construction Co.*, 58 N. Y., Super. Ct., 539; *Tool Co. v. Norris*, 2 Wallace [U. S.], 45.)   No accounting can be had of a vicious transaction and there can be no contribution between wrong-doers. (*Watson v. Murray*, 23 N. J. Eq., 257; *Todd v. Rafferty*, 30 Id., 254; *Northup v. Phillips*, 99 Ill., 449; *Embrey v. Jennison*, 131 U. S., 336; *McClintock v. Loismeau*, 31 W. Va., 867; *Leonard v. Poole*, 114 N. Y., 371; *Mitchell v. Cockburne*, 2 H. Blackst. [Eng.], 80; *Steers v. Lashley*, 6 Term [Eng.], 61; *Aubert v. Maze*, 2 Bos. & P., [Eng.], 371; *Knowles v. Houghton*, 11 Ves. Jr. [Eng.], 168; *Cousins v. Smith*, 13 Id., 542; *Ex parte Bulmer*, Id., 313; *Evans v. Richardson*, 3 Meriv. [Eng.], 469; *Battersby v. Smyth*, 3 Mad. [Eng.], 110; *Armstrong v. Armstrong*, 3 Mylne & K. [Eng.], 45; *Ewing v. Osbaldiston*, 2 Mylne & C. [Eng.], 53; *Sykes v. Beadon*, L. R. 11, Ch. Div. [Eng.], 170; *Bartle v. Nutt*, 4 Pet. [U. S.], 184; *Wheeler v. Sage*, 1 Wall. [U. S.], 518; *Brown v. Tarkington*, 3 Id., 377; *Fletcher v. Watson*, 7 Gratt. [Va.], 1; *Gregory v. Wilson*, 36 N. J. L., 315; *Root v. Stevenson's Adm'r.*, 24 Ind., 115; *Miller v. Davidson*, 8 Ill., 518; *Skeels v. Phillips*, 54 Id., 309; *Neustadt v. Hall*, 58 Id., 172; *Craft v. McConoughy*, 79 Id., 346; *Lane v. Thomas*, 37 Tex., 157; *Read v. Smith*, 60 Id., 379; *Anderson v. Powell*, 44 Ia., 20; *Boyd v. Barclay*, 1 Ala., 34; *Belding v. Pitkin*, 2 Caines R. [N. Y.], 147; *Hooker v. Vande-*

*water*, 4 Denio [N. Y.], 349; *Stanton v. Allen*, 5 Id., 434; *Atcheson v. Mallon*, 43 N. Y., 147; *Gray v. Hook*, 4 Id., 449; *Woodworth v. Bennett*, 43 Id., 273; *Arnot v. P. & E. Coal Co.*, 68 Id., 558; *Sampson v. Shaw*, 101 Mass., 145; *Snell v. Dwight*, 120 Id., 9; *Durham v. Presby*, Id., 285; *Morris Run Coal Co. v. Barclay Coal Co.*, 68 Pa. St., 173; *King v. Winants*, 71 N. Car., 469; *Gould v. Kendall*, 15 Neb., 549; *Hardy v. Stonebraker*, 31 Wis., 640; *Fairbank v. Leary*, 40 Id., 637.) The bill of exceptions must be signed by the referee. (*Light v. Kennard*, 10 Neb., 330; *Turner v. Turner*, 12 Id., 161.)

*Mahoney, Minahan & Smyth, contra:*

The contract did not seek to defeat competition; the firm simply agreed that it would not lobby with the board to secure the work. (*Breslin v. Brown*, 24 O. St., 565; *Smith v. Greenlee*, 2 Dev. [N. Car.], 129; *McMinn v. Phipps*, 3 Sneed [Tenn.], 196; *Small v. Jones*, 6 Watts & Serg. [Pa.], 122; *James v. Fulcrod*, 5 Tex., 512; Greenhood on Public Policy, 666; *Koehler v. Feverbacher*, 2 Mo. App., 11; *Briggs v. Tillotson*, 8 Johns. [N. Y.], 304; Greenhood on Public Policy, 172, 116; *Hoyt v. Holly*, 39 Conn., 326; *Richmond v. Ry. Co.*, 26 Ia., 191; *Kellogg v. Larkin*, 3 Pinney [Wis.], 123; *Swann v. Swann*, 21 Fed. Rep. [Ark.], 299.) Even if the contract were illegal, appellee can enforce contribution for his payments to Woodworth. (*Piatt v. Oliver*, 1 McLean [U. S.], 295; *Bell v. Parker*, 3 Dana [Ky.], 51; *Holt v. Barton*, 42 Miss., 711; *Hamilton v. Canfield*, 2 Hall [N. Y.], 526; *Proseus v. McIntyre*, 5 Barb. [N. Y.], 424; *Parker v. Tiffany*, 52 Ill., 286; *Matthews v. Buck*, 43 Me., 265; *Wells v. McGeoch*, 35 N. W. Rep. [Wis.], 769; *Brooks v. Martin*, 2 Wall. [U. S.], 70; *Sharp v. Taylor*, 2 Phillips, Ch. [Eng.], 801; *Williams v. Gibbes*, 20 How. [U. S.], 535; *McBlair v. Gibbes*, 17 Id. [U. S.], 239.)

MAXWELL, CH. J.

This is an action for a dissolution of a partnership and for an accounting. The case was referred by consent to a referee, who heard the testimony and made a report as follows:

"In pursuance of an order of this court, made at the February term thereof, 1889, whereby it was referred to me, the undersigned, as referee, to make findings of facts in this cause in pursuance to said order hereto attached as a part hereof, I, the subscriber, referee, as aforesaid, report that upon the 10th day of May I duly qualified and proceeded to the hearing of said cause. The plaintiff appearing in person, and by his attorneys, Mahoney, Minahan & Smyth, and the defendants likewise appearing in person and by their attorneys, F. A. Brogan and G. W. Ambrose, and C. B. Denney as stenographer, who was duly sworn to take down the testimony of witnesses in the hearing of said cause, whereupon the hearing proceeded and all the witnesses offered by either party to the cause were duly heard, their testimony reduced to writing and duly certified to this court, as a part of this report and as of record herein, and upon which I find and report the following facts, to-wit:

"First—That the plaintiff and defendants by oral agreement entered into copartnership some time in the month of September, 1886, under the name, style, and firm of T. F. Brennan & Co.; that the business to be undertaken at the time by said firm was the building of the retaining walls around the court house for Douglas county; that it was understood at the time of the copartnership agreement that plaintiff was a person of financial credit and ability, and was taken into said firm under that understanding, and that through a subsequent understanding, and at the instance of the Bank of Commerce, much of the business of said firm was done in the name of Whalen & Brennan.

In the first instance the contract of copartnership only contemplated the construction of the court house retaining wall, but this agreement was enlarged in so far as to include a contract for a sidewalk on the north side of the court house square, the erection of foundations and sub-basement of the city hall, and certain small contracts for paving, grading, and curbing, together with a contract to do the work in laying about 80,000 feet of curbing in different parts of the city. In all the copartnership matters, except the last named contract for laying curbing, the interest of plaintiff and each of the defendants was to be equal to one-third each, both as to profit and loss. As to the last named contract, the facts relating thereto are hereinafter more fully set forth in my findings of fact herein.

"Second—That at the time of the formation of said copartnership the firm opened a bank account with the Bank of Commerce in the name of Whalen & Brennan, upon which the firm drew from time to time in the payment of its obligations and into which firm funds were deposited; that said account was frequently overdrawn and that said overdrafts were allowed by the bank upon faith and credit of plaintiff and upon assignments of firm contracts; that said account was for the benefit of the firm of T. F. Brennan & Co., and has never been closed; that there remains to the credit of said firm on said bank account the sum of $15.26. Further, at the time of the formation of said copartnership, and until the latter part of June, A. D. 1887, the said firm had another account in the said Bank of Commerce, running in the name of T. F. Brennan & Co., which account was closed up in the latter part of the month last named.

"Third—The books of the firm were loosely and imperfectly kept and all their accounts and statements of the firm's transactions were and are loose, indefinite, and unsatisfactory in their condition, rendering it almost impossible to arrive at anything like a true understanding of the affairs of the copartnership from the books alone, but the

Whalen v. Brennan.

referee has been materially aided by counsel and the parties in rendering an accurate accounting between the parties.

"Fourth—That the present assets of the firm are as follows:

Funds in Bank of Commerce ................................ $15 26
Due from Charles F. Manderson .................... 1,558 40
Derricks, worth about ................................. 300 00
Wagon, worth about .................................... 75 00
Quarry tools ........................................... 110 00
Barrows ................................................ 30 00
Stone .................................................. 100 00
One horse .............................................. 100 00

$2,188 66

"In addition to the foregoing assets the defendants claim that the city of Omaha is indebted to said firm in the sum of $14,000, which claim is disputed by the city and suit is now pending in this court for recovery of same.

"Fifth—That the present liabilities of the firm to third parties are as follows:

Due Andrew Murphy ................................... $85 00
Due Dow ................................................ 12 35
Due McConnell & Orr .................................. 50 00
Due U. S. E. & P. Co .................................. 149 00
Due for brick .......................................... 16 00

Total ..............................................$312 35

"Sixth—That plaintiff is entitled upon accounting to the following credits against the firm:

By certificate of deposits of the date of June 24,
    1887, and redeposited to the credit of the firm
    in July or August, same year ....................$5,440 80
By cash paid into firm funds ........................ 1,082 20
By cash paid into firm funds ........................ 350 00
By cash paid into firm funds ........................ 76 00
By feed bill paid ..................................... 35 00

| | | |
|---|---:|---:|
| By cash paid Gray...................................... | $47 | 44 |
| By cash paid for wagon............................... | 20 | 00 |
| By cash paid for harness............................. | 12 | 00 |
| By cash paid for demurrage......................... | 7 | 00 |
| By cash paid for doctoring horse.................... | 20 | 00 |
| By cash paid for typewriter ........................ | 5 | 00 |
| By cash paid to J. F. Whalen....................... | 16 | 00 |
| By cash paid to O'Donohue......................... | 16 | 00 |

Making the sum of...........................$7,127 44

"The plaintiff claims a further credit of two items, the one as a balance on the court house retaining wall, $917.11. The other balance due on the city hall, $4,927.68. If it be found in law that the plaintiff is entitled to these credits upon the facts hereinafter stated in paragraph eight, it would give the plaintiff a credit upon the firm account as a total, $12,972.23.

"Seventh—The plaintiff is chargeable in the firm account as debits as follows:

| | | |
|---|---:|---:|
| To certificate of deposit June 24, 1887............$5,440 | | 80 |
| To J. A. Linahan check.............................. | 3 | 00 |
| To cash from Barker job............................. | 1,120 | 00 |
| To check, as per Ex. "C".......................... | 50 | 00 |
| To Foxworthy checks................................ | 134 | 00 |
| To Mount note..................................... | 171 | 00 |

Total............................................$6,918 80

"Eighth—The claim of the plaintiff in regard to the two items, viz., $917.11 and $4,927.68, in their disposal involves a question of law which, in construing the measure of his duty and the scope of authority given under the order of reference, your referee deems to have been reserved by the court for determination, and makes his finding of facts for that purpose as follows: In the early part of the year 1887 the city of Omaha, through its constituted authorities, advertised for sealed proposals for about 80,000

lineal feet of curbing.   In response to said advertisement
one C. D. Woodworth filed a bid for doing said curbing
with Colorado sandstone, and the firm of T. F. Brennan
& Co. filed two bids for doing said curbing, one for Colo-
rado sandstone and one with Berea or Cleveland sandstone
(the term Berea and Cleveland being used by the parties
interchangeably as denoting the same stone).   Each of the
said bids was accompanied by a certified check, forfeitable to
the city of Omaha in the event that the bidder to whom the
contract should be awarded should fail to enter into the re-
quired contract and give the required bond for the per-
formance thereof.   The bid by T. F. Brennan & Co. for
Colorado sandstone curbing was higher than the bid by C.
D. Woodworth for the same material, but the bid of T. F.
Brennan & Co. for Berea sandstone curbing was lower
than that of C. D. Woodworth for Colorado sandstone
curbing.   Woodworth's bid was made without any knowl-
edge of what either of the bids of T. F. Brennan & Co.
might be, and entirely independent thereof, and both bids
of T. F. Brennan & Co. were made without any knowl-
edge of the Woodworth bid, and entirely independent and
in competition therewith.   After the bids were in and be-
fore they had been acted upon by the board of public works
of the city of Omaha, Woodworth being apprehensive that
the said board would approve the bid of T. F. Brennan
& Co. for Berea sandstone, entered into communication
with plaintiff and E. J. Brennan, as of the firm of T. F.
Brennan & Co., and it was finally agreed between Wood-
worth and the said firm that the said firm of T. F. Bren-
nan & Co. would not press their claim for the contract, but
would quietly use their influence in favor of the Wood-
worth contract, in consideration of which the said Wood-
worth agreed, in the event of the contract being awarded
to him upon his bid, to sublet to said firm the furnishing
of the sand, hauling, cutting and setting, in fact, all of
the labor of putting in the Colorado curbing at thirty cents

per lineal foot, and would make concessions in the price of stone to be furnished the firm of T. F. Brennan & Co. on the court house retaining wall, and for the foundation and sub-basement of the city hall.

"It does not appear that any direct communication was made with the board of public works or the city council by any members of the firm of T. F. Brennan & Co., to induce said board or council to accept the Woodworth bid instead of their own, but it does appear that certain members of the firm of T. F. Brennan & Co. did use their influence with outside persons that they believed would have influence with the board of public works and city council in inducing them to act within the spirit of this agreement. But it is not shown that any communication was made to the said council or board of public works through such influence.

"It was known and recognized by all the parties to this understanding that in the event of the acceptance of the bid of C. D. Woodworth for the curbing with Colorado sandstone it would cost the city more money than the acceptance of the bid of T. F. Brennan & Co. for Berea sandstone. The arrangement between Woodworth and T. F. Brennan did not contemplate the withdrawal of the bids of the latter before the board of public works, and none of the bids were withdrawn, but all of said bids, together with their accompanied certified checks, remain in the hands of the board of public works, subject to their order and until the contract was finally let. Shortly after this the contract for curbing was awarded to C. D. Woodworth by the city, and that in pursuance to said agreement so made C. D. Woodworth and the members of the firm of T. F. Brennan & Co. met at the Bank of Commerce and there came to a full understanding, both as to the manner of and terms of doing the work in the laying of the curbing under said contract of said Woodworth with the city. It was agreed that the contract existing between Wood-

worth and T. F. Brennan & Co. should be drawn in the name of Frank B. Johnson, trustee, and in pursuance to which Woodworth executed two separate papers, one of which was in substance as follows:

"'OMAHA, NEB., March 3, 1887.

"'*F. B. Johnson, Trustee:*

"'For and in consideration of $1.00 in hand paid and other consideration, I agree to furnish Colorado sandstone for the new city hall basement and sub-basement as follows, viz., Rubble $6.50 per cub. yd.; rough ftgs., 40 per cub. ft.; dimensions, 60 per cub. ft.; to be measured on board at Omaha by parties in interest, rubble to be measured 4,000 lbs. cub. yd.; material to be furnished and ordered as required and to be paid for as estimates are furnished by superintendent in charge. Stone hereafter furnished for court house wall subject to the same conditions as herein named.          C. D. WOODWORTH.'

"And the testimony with respect to the same is that the word 'hereafter' above 'stone' and 'furnished' was inserted between the lines and in another colored ink, and the testimony further tends to show that the said word was inserted after the contract was executed and delivered, and without the knowledge or consent of any member of the firm of T. F. Brennan & Co. The other paper which Woodworth executed as a part of this general agreement is not in evidence, but by the terms of which he agreed to pay Frank B. Johnson, trustee, thirty cents per lineal foot for furnishing the sand, hauling, cutting, and setting the curbing hereinbefore mentioned. It was understood between the parties that Johnson was trustee for the benefit of himself and the firm of T. F. Brennan & Co; that Johnson was to have one-third interest in this contract, and the firm of T. F. Brennan & Co. two-thirds.

"In pursuance of this agreement the firm of T. F. Brennan & Co. entered into and undertook the performance of the labor, furnishing the sand, cutting the stone,

and setting the curbing, and after about 17,000 feet of curbing had been laid the defendants abandoned the job and gave no further attention to it.

"The plaintiff, after having formally called the attention of the defendants to the manner in which this contract was being performed, and received from defendant T. F. Brennan the statement that he had abandoned it, and the defendant E. J. Brennan making no satisfactory response, the plaintiff assumed that defendants had abandoned said contract, and furnished the money to carry on the job of curbing to completion. During the time this job of curbing was in process of performance Woodworth furnished the firm of T. F. Brennan & Co. stone, perhaps one load in all, for the completion of the retaining wall of the court house, and the stone required for the construction of the basement and sub-basement of the city hall, to the amount and value as claimed by Woodworth under the foregoing written order to Johnson, trustee, in the sum of $7,927.68, upon which amount the said firm paid Woodworth $3,000, leaving a balance due Woodworth upon his statement of the account for stone furnished for the city hall, $4,927.68. He had also furnished stone to the said firm of T. F. Brennan & Co., to be used in the construction of the court house retaining wall, in all to the amount of $2,767.11; the firm had paid upon this account $1,850, leaving a balance as claimed by Woodworth unpaid the sum of $917.11. The price which Woodworth had fixed upon his stone prior to this agreement was for rough footing fifty-five cents, and one of the considerations in allowing Woodworth to obtain the contract for curbing was to secure this stone at forty cents per cubic foot.

"Upon presentation of these amounts for payment they were disputed by defendant E. J. Brennan, who superintended the work and had charge of the receiving of the stone, upon the claim of overcharge as the amount of stone furnished, something like $2,000, and the overcharge for

the stone furnished for the court house retaining wall for nearly the entire balance claimed. The fact that these two items of Woodworth's account, amounting to $5,844.79, were in dispute, was brought to the knowledge of plaintiff prior to the time of claimed payment.

"At the time when Woodworth settled with Johnson, trustee, for the work and labor performed upon the curbing contract, Woodworth deducted this amount from the sum due Johnson, trustee, upon said contract, and though the testimony is not clear, yet from what is in proof it can be readily inferred that Johnson carried this amount to the account of T. F. Brennan & Co. as an overdraft, and required plaintiff to settle the account, and pressed this upon plaintiff until it became an annoyance and a threatened injury to his financial standing, he took $1,120, obtained from Barker, and discounted his own note in payment of the balance. This was done without the knowledge of the defendants, they having at all times insisted that there was not that amount due; that the stone furnished did not correspond with amount charged.

"Ninth—That the defendant T. F. Brennan, upon this accounting, is entitled to credit as between himself and the firm for $1,000 cash paid into the said firm account out of funds received by him June 24, 1887, and is chargeable with the following items upon said firm account, viz.:

| | |
|---|---|
| To certificate of deposit June 24, 1887........... $5,301 | 67 |
| To Cleigh............................................. 25 | 00 |
| To flagging around house.......... .................. 58 | 03 |
| December 11, 1886, to check ........................ 30 | 00 |
| January 8, 1887, to check ........................... 5 | 00 |
| February 26, 1887, to check ........................ 5 | 00 |
| March 1, 1887, to check............................. 20 | 00 |
| April 19, 1887, to check............................. 15 | 00 |
| May 5, 1887, to check ............................... 9 | 35 |
| May 13, 1887, to check .............................. 5 | 00 |
| May 27, 1887, to check .............................. 36 | 00 |

| | |
|---|---:|
| May 27, 1887, to check ............................ | $5 00 |
| June 1, 1887, to check ............................. | 50 00 |
| June 2, 1887, to check ............................. | 5 00 |
| June 6, 1887, to check............................. | 25 00 |
| June 27, 1887, to check ........................... | 5 00 |
| March 29, 1887, to check........................... | 5 00 |
| June 22, 1887, to check............................ | 12 00 |
| January 22, 1887, to check ........................ | 3 00 |
| January 28, 1887, to check......................... | 10 00 |
| January 10, 1887, to check ........................ | 28 25 |
| January 14, 1887, to check ........................ | 6 00 |
| February 9, 1887, to check ........................ | 4 50 |
| February 7, 1887, to check ........................ | 4 50 |
| February 21, 1887, to check ....................... | 3 45 |
| February 3, 1887, to check ........................ | 5 50 |
| May 11, 1887, to check ............................ | 25 00 |
| To check, as per Ex. C............................. | 11 50 |
| March 27, 1887, to check........................... | 36 00 |
| October 20, 1886, to check......................... | 14 00 |
| May 2, 1887, to check ............................. | 30 00 |
| June 22, 1887, to check ........................... | 5 00 |
| June 10, 1887, to check ........................... | 5 00 |
| To check ........................................... | 5 80 |
| To cash ............................................ | 4 50 |
| To check ........................................... | 12 90 |
| To check ........................................... | 8 80 |
| To check ........................................... | 1 55 |
| To check ........................................... | 18 60 |
| To check ........................................... | 28 65 |
| To check ........................................... | 23 10 |
| To check ........................................... | 3 50 |
| Total..........................................| $5,915 20 |

"Tenth—That defendant E. J. Brennan is entitled to the following credits upon the firm account, viz.:

| | | |
|---|---:|---:|
| Expense allowance nine months | $450 | 00 |
| By deposit to firm account | 2,000 | 00 |
| By cash paid into firm fund | 350 | 00 |
| By Beals, cash paid to laborers | 75 | 00 |
| By use of horse and buggy March 25 fo November 12, '87 | 164 | 00 |
| By use of horse and buggy January 28 to February 10, '88 | 8 | 00 |
| By use of two derricks eleven months | 220 | 00 |
| By stabling for team | 51 | 00 |
| By use of tool shed | 43 | 00 |
| By cash paid to McConnell & Orr | 25 | 00 |
| By cash paid for labor and freight | 64 | 00 |
| Total | $3,450 | 00 |

"And the said E. J. Brennan is chargeable on the said firm account with the following items, viz.:

| | | |
|---|---:|---:|
| June 24, 1887, to certificate of deposit | $3,833 | 30 |
| To J. A. Linahan, check | 7 | 00 |
| To firm funds used to pay on loan | 300 | 00 |
| To cash received from Rosewater | 98 | 40 |
| To Katz, cash | 15 | 00 |
| To McCaffery, cash | 137 | 20 |
| To Stevens & Son, cash | 20 | 00 |
| To Creighton, cash | 19 | 50 |
| To cash for current expenses | 50 | 00 |
| To county warrant for material | 38 | 15 |
| To Mead, cash | 3 | 00 |
| To Beals, cash | 150 | 00 |
| To labor on Davis fountain | 20 | 55 |
| To Cahn | 32 | 00 |
| To cash for horse | 25 | 00 |
| To material in Davis fountain | 2 | 50 |
| April 25, 1887 | 5 | 00 |
| May 10, 1887, to check | 36 | 95 |
| June 3, 1887, to check | 55 | 00 |

| | | |
|---|---:|---:|
| June 15, 1887, to check .............................. | $50 | 00 |
| July 2, 1887, to check ................................ | 46 | 50 |
| April 15, 1887, to check.............................. | 100 | 00 |
| September 19, 1887, to check ....................... | 11 | 80 |
| December 13, 1887, to check......................... | 8 | 70 |
| September 8, 1887, to check...̇...................... | 50 | 00 |
| October 1, 1887, to check............................. | 50 | 00 |
| June 18, 1887, to check .............................. | 50 | 00 |
| July 30, 1887, to check .............................. | 100 | 00 |
| April 2, 1887, to check ............................... | 30 | 00 |
| December 17, 1887, to check......................... | 11 | 00 |
| December 20, 1887, to check......................... | 6 | 25 |
| June 22, 1887, to check............................... | 9 | 50 |
| January 15, 1887, to check ...............·........... | 25 | 00 |
| February 10, 1887, to check.......................... | 2 | 25 |
| February 4, 1887, to check ........................... | 5 | 20 |
| February 24, 1887, to check ......................... | 15 | 00 |
| February 16, 1887, to check ......................... | 30 | 00 |
| February 14, 1887, to check ......................... | 28 | 80 |
| February 5, 1887, to check ........................... | 6 | 00 |
| February 4, 1887, to check ........................... | 15 | 00 |
| January 14, 1887, to check ........................... | 9 | 30 |
| February 19, 1887, to check ......................... | 25 | 94 |
| January 22, 1887, to check ........................... | 7 | 20 |
| January 18, 1887, to check........................... | 95 | 85 |
| January 15, 1887, to check ........................... | 18 | 95 |
| February 4, 1887, to check ........................... | 5 | 00 |
| June 7, 1887, to check................................. | 60 | 00 |
| June 7, 1887, to check................................. | 90 | 00 |
| May 21, 1887, to check ............................... | 10 | 00 |
| November 15, 1886, to check ........................ | 3 | 50 |
| March 12, 1887, to check.............................. | 30 | 00 |
| December 8, 1886, to check........................... | 12 | 00 |
| December 17, 1886, to check......................... | 125 | 00 |
| December 17, 1886, to check......................... | 32 | 00 |
| December 20, 1886, to check......................... | 50 | 00 |

| | | |
|---|---:|---:|
| December 17, 1886, to check........................... | $23 | 33 |
| December 4, 1886, to check............................ | 30 | 00 |
| December 4, 1886, to check............................ | 10 | 00 |
| March 27, 1886, to check ............................ | 75 | 00 |
| March 8, 1886, to check............................... | 40 | 00 |
| December 20, 1886, to check.......................... | 12 | 00 |
| September 13, 1886, to check ........................ | 10 | 00 |
| November 25, 1886, to check.......................... | 50 | 00 |
| February 18, 1887, to check ......................... | 50 | 00 |
| February 10, 1887, to check ......................... | 40 | 00 |
| January 8, 1887, to check ........................... | 10 | 00 |
| November 8, 1886, to check .......................... | 51 | 00 |
| November 25, 1886, to check.................. ...... | 5 | 00 |
| September 11, 1886, to check ........................ | 14 | 00 |
| December 11, 1886, to check.......................... | 100 | 00 |
| December 15, 1886, to check.......................... | 5 | 00 |
| May 26, 1887, to check .................. ............ | 400 | 00 |
| June 9, 1887, to check................................ | 65 | 00 |
| August 20, 1887, to check............................ | 100 | 00 |
| July 11, 1887, to check .............................. | 250 | 00 |
| July 4, 1887, to check.. ............................. | 56 | 25 |
| July 29, 1887, to check ............................. | 36 | 60 |
| May 30, 1887, to check .............................. | 13 | 75 |
| December 16, 1887, to check.......................... | 2 | 95 |
| October 14, 1887, to check........................... | 8 | 00 |
| April 20, 1887, to check................... .......... | 151 | 40 |
| July 23, 1887, to check.............................. | 53 | 00 |
| February 7, 1887, to check .......................... | 345 | 00 |
| November 17, 1886, to check ........................ | 200 | 00 |
| Amount paid to Omaha Banking Co .............. | 129 | 00 |
| To Harris & Fisher ................................... | 378 | 00 |

Total.............................................$8,787 99

"Eleventh—That the defendants E. J. Brennan and T. F. are jointly chargeable to the said firm in the sum of $233.73.

" Twelfth—In regard to the claim of defendant E. J. Brennan for salary as superintendent on the city hall work I find that he did act as the superintendent and manager of the work, that he was the only person in said firm whose knowledge enabled them to intelligibly make the bids, enter into the contracts and intelligibly prosecute the work upon contracts made ; that the services rendered by him for the firm exceeded in the value all the services rendered by the other members in at least $100 per month ; that defendant claimed that he was entitled to and ought to have such salary but no agreement was made with regard to the same, other than allowing $50.00 per month as expense fund, which seemed to have been given in place of salary, and the matter rested there in the absence of specific agreement for salary.   The same is not allowed by referee.

" Thirteenth—On the 24th day of June, A. D. 1887, the said firm of T. F. Brennan & Co. completed the retaining wall about the court house and it appears to have been the purpose of all the partners to treat that contract by itself, and to settle the account independent of the contract upon the city hall.

" Whereupon defendant T. F. Brennan made out a statement in writing, from the books of the firm, which said statement contained the following entries :

Total amount estimates...........................$33,192 90
Total expenses.....................................  16,300 49

Net gain...........................................$16,892 41

" $16,892.41 divided by 3 equals $5,630,80; $5,630.80 less $1,797.50 equals $3,833.30, Ed's portion ; $5,630.80 less $329.13 equals $5,301.67, T. F.'s portion ; $5,630.80 less $190 equals $5,440.80, J. A.'s portion.

EXPENSES ITEMIZED.

Stone cutting....................................... $3,271 87
Masons and ptg. and flag..........................  1,028 77
13

| | | |
|---|---:|---:|
| Labor........................................................ | $2,398 | 87 |
| Teams...................................................... | 879 | 77 |
| Freight and materials............................... | 8,472 | 03 |
| Sundries, feed, tools, plg., etc., and personals... | 2,165 | 71 |
| | $18,217 | 02 |
| Less personals............................. | 1,916 | 63 |
| | $16,300 | 39 |

"And the defendant T. F. Brennan then paid to himself and to the plaintiff and the defendant E. J. Brennan the amounts which said statement showed due to them separately as above, out of the profits upon said work, making a total drawn out from the firm funds at that time of $14,-575.77. The amount deducted in each case from one third of the profits shown upon the statement was stated to represent the amount of money which the members of the firm had separately withdrawn from the firm funds for their own use and benefit prior to the said 24th day of June, A. D. 1887. The withdrawal of said amount of $14,575.77 from the bank account of the said firm left a large overdraft in the bank, or in other words, overdrew the account of the firm in the bank by reason of the funds being drawn out and used to carry on the city hall contract at the same time; upon discovering which the plaintiff immediately redeposited to the firm account of the entire amount paid to him, viz., $5,440.80, and the defendant E. J. Brennan subsequently deposited $2,000, and T. F. Brennan $1,000, Prior to the making out of this statement and at the time the division of the assumed profits on the retaining wall was suggested, the defendant T. F. Brennan informed the plaintiff that all debts contracted in carrying on said work had been paid except a small amount due to C. D. Woodworth, and that would be paid. At the time the written statement was delivered to plaintiff, together with the certificates of deposit, nothing further was said about the

debts. This statement was taken from the books of. the firm, mainly kept by and in charge of defendant·T. F. Brennan, but had been kept in such disregard of the ordinary rules of book-keeping as to furnish no statement of final accounting at large, or with any member of the firm..

"The statement made out was incorrect in the following: particulars: It failed to state the amount claimed by Woodworth at the time, of $917.11, due Gray $22, Cleveland Stone Company $14, making a total of unadjusted claims of $953.11.

"Again, the total cost of the retaining wall, if their claims had been included, would have been $18,269.62, instead of amount shown, $16,300.49, in statement presented.

"The profits accruing from said contract were $14,923, instead of the amount stated, $16,892.63. By assent of defendants on hearing, their accounts at this time were not separately stated, and it appears that there had been drawn out $3,404.16, instead of the amount, $2,126.63, as stated, which would have left to defendants, as the true profits as at that time contemplated, $6,551.35, instead of $8,936.97, the amount actually drawn. But this seems to have been done by all parties in real ignorance of the status of their own and the firm account, and without intention to defraud. And of the amount drawn out by the defendant E. J. Brennan on said 24th day of June, A. D. 1887, $1,100 was used in the paying off and discharging a mortgage of that amount existing upon the premises in Hartman's addition, and described in plaintiff's petition, which said premises belonged to the defendant E. J. Brennan, although the legal title therefor was in the defendant T. F. Brennan, and of the amount then drawn out by the defendant T. F. Brennan, $240 was invested in real estate in Custer county, Nebraska, and about $4,000 invested in lot 3 of block 3 of Kountze Place, an addition to the city of Omaha, which said last named premises belonged to the defendant T. F. Brennan.

"Fourteenth—I further find that in the event the court allows plaintiff credit for the two items, $917.11 and $4,927.68, upon the facts stated, plaintiff would be entitled, upon accounting, to the sum of $7,531.25. To this the defendant E. J. Brennan should contribute the sum of $3,977.02, and defendant Thos. F. Brennan the sum of $3,554.23. But in the event the court disallows plaintiff credit for the two items, $917.11 and $4,927.68, upon the facts stated, then the plaintiff would be entitled upon account to the sum of $3,634.73. To this the defendant E. J. Brennan should contribute the sum of $2,028.78, and the defendant Thos. F. Brennan the sum of $1,605.95, without allowance of interest upon amounts shown, which, if allowed, would increase amounts respectively in amount of interest allowed.

"Upon the foregoing statement each of the parties, plaintiff and the two defendants, would be entitled to their equal one-third in all the assets of the firm over and above the indebtedness as shown.

"D. P. GREGORY, *Referee.*"

A motion to re-refer was afterwards made, whereupon the attorneys of the respective parties entered into the following agreement:

"It is hereby agreed and stipulated by and between the parties hereto that the words 'as claimed by Woodworth,' in the eighth line of page eight of the report of the referee heretofore filed, shall be struck out and the exceptions and motion to refer filed by the plaintiff shall be overruled, and said report with said above words struck out shall be confirmed."

By striking out the words agreed upon the report of the referee upon that point reads as follows:

"He" (Woodworth) "also furnished stone to said firm of T. F. Brennan & Co., to be used in the construction of the court house retaining wall, in all to the amount of

$2,767.11.   The firm had paid upon this account $1,850, leaving a balance unpaid the sum of $917.11."

· The report was thereupon submitted to the court, which rendered a judgment as follows:

"That this cause coming on to be heard upon the amended petition of plaintiff, the answer thereto by defendants and plaintiffs' reply, and the report of the referee filed herein, on the 19th day of September, A. D. 1889, and the evidence taken before said referee, and the court, having heard the arguments of counsel, and being fully advised in the premises, finds that the allegations in said plaintiff's petition contained are true and that plaintiff is entitled to the relief prayed for in said petition, and further the court finds specifically as follows:

" First—That the plaintiff and defendants, by oral agreement, entered into a copartnership in September, 1886, under the firm name and style of T. F. Brennan & Co.; that the business of said firm of T. F. Brennan & Co. was the erection of stone and brick buildings and walls, the laying of stone flagging and sidewalks and kindred works, upon contract; that by the terms of said copartnership the plaintiff was to furnish the necessary credit for the carrying on of the business of said firm, and the defendants were to advance their time and experience to the conducting and management of said business, and each of the defendants was to receive one-third of the profits of the business of said firm, and each member thereof was to bear one-third of the losses incurred in the business of said firm.

" Second—That said copartnership has not been formally dissolved, but that plaintiff is entitled to a decree for the dissolution of the said copartnership as prayed in his amended petition.

"Third—That the present assets of said firm are:
Funds in the Bank of Commerce ................. $15 26
Due from Chas. F. Manderson ................... 1,558 40

Derricks worth as per estimate of referee ......... $300 00
Wagon worth as per estimate of referee ...........   75 00
Quarry tools worth as per estimate of referee.....  110 00
Barrows worth as per estimate of referee .........   30 00
Stone worth as per estimate of referee ............  100 00
One horse as per estimate of referee ...............  100 00

          Total as per estimate of referee ..........$2,188 66

"Fourth—That the present liabilities of said copartner-
ship to third parties are :

Due to Andrew Murphy ............................  $85 00
Due to Dow ......................................   12 35
Due to McConnell & Orr ..........................   50 00
Due to U. S. W. E. & P. Co .......................  149 00
Due for brick ....................................   16 00

          Total .......................................... $312 35

"Fifth—That besides the amounts named in the third
finding hereof, the defendants claim that the city of Omaha
is indebted to the said copartnership in the sum of $14,000,
for which suit has been commenced and is now pending
in this court against the city of Omaha.

"Sixth—That upon the accounting between plaintiff and
defendant, plaintiff is entitled to credit against the said co-
partnership by the amount of $12,972.23 and is charge-
able with debits to the said copartnership to the amount of
$6,918.80.

"Seventh—That the defendant Thomas F. Brennan upon
the accounting is entitled to credit as against the said co-
partnership by the amount of $1,000, and is chargeable to
the said copartnership with debits to the amount of
$5,915.20.

"Eighth—That upon the accounting the defendant Ed-
ward J. Brennan is entitled to credit by the amount of
$3,450, and is chargeable to the said copartnership with
debits to the amount of $8,787.99.

"Ninth—That upon the accounting the defendants are jointly chargeable to the copartnership by debits to the amount of $233.73.

"Tenth—That the following described real estate, situate in the county of Douglas, and state of Nebraska, to-wit, the north 45 feet of the west 98½ feet of lot 31, and the south five feet of the west 98½ feet of lot 30 in Hartman's addition to the city of Omaha, is the property of the defendant Edward J. Brennan, and only the bare legal title thereof is held by the defendant Thomas F. Brennan in trust for the said Edward J. Brennan, but the court finds that the plaintiff is not entitled to a trust interest in said premises by reason of the partnership transaction between the plaintiff and the defendants.

"Eleventh—It appearing to the court that the plaintiff has filed herein a disclaimer in and to the following items of assets of the firm, to-wit, derricks, wagons, quarry tools, barrows, and stone, and it further appearing that the plaintiff has agreed to take at the values placed thereon by the referee the following items of assets of said firm : Funds in the Bank of Commerce, $15.26 ; claim against Charles F. Manderson, $1,558.40; and one horse worth $100, and to pay out of said assets the debts found owing by said firm as per report of referee, and to credit each of the defendants with one-third of the net proceeds of said assets remaining in the hands of the plaintiff after paying said debts :

"The court therefore finds that the plaintiff is entitled to a judgment against the defendant, after making such credits, for the sum of $6,623.71 of which amount the sum of $3,523.25 is due and owing to said plaintiff by the defendant Edward J. Brennan, and the sum of $3,100.46 is due and owing to the plaintiff by the defendant Thomas F. Brennan. It is therefore considered, adjudged, and decreed by the court that the copartnership heretofore existing between the plaintiff and the said defendant be, and

the same hereby is, dissolved; that the plaintiff have and
recover from the defendant Edward J. Brennan the sum of
$3,523.25, and that the plaintiff have and recover from the
defendant Thomas F. Brennan the sum of $3,100.46;
that the plaintiff take and apply to his own use and bene-
fits the following items of assets of the said firm, to-wit:
Funds in the Bank of Commerce, $15.26; due from
Charles F. Manderson, $1,558.40, and one horse worth, as
per estimate of referee, $100; that plaintiff pay the fol-
lowing liabilities of the said firm, to-wit: To Andrew
Murphy, $85; to Dow, $112.35; to McConnell and Orr,
$50; to U. S. W. E. & P. Co., $149; amount owing for
brick, $116; that the plaintiff have and recover from the
defendants Edward J. Brennan and Thomas F. Brennan
his costs herein, taxed at $——; that the sum of $225 be
allowed and taxed as costs in this cause in favor of D. D.
Gregory, the referee; that the sum of $175 be allowed and
taxed as costs in this action in favor of C. B. Denny, the
stenographer reporting the testimony taken before said ref-
eree, and that execution be awarded against said defend-
ants for the said several sums of judgment and costs. It
is further considered, adjudged, and decreed by the court
that in the event of recovery being had against the city of
Omaha in the cause of action referred to in the fifth find-
ing hereof, each of the plaintiff and the defendants shall
be entitled to receive one-third of the amount so recovered
from the said city of Omaha."

But two objections are made to this judgment by the de-
fendants, who are the appellants in the case: First, the al-
lowance of the item of $917.11 for the stone for the court
house retaining wall; and second, the item of $4,927.68
paid to Woodworth for curbing.

On behalf of the appellee it is insisted that we cannot
review the findings of the referee because there is no bill
of exceptions in the case. In this, however, he is mis-
taken, as the bill is duly signed by the referee and is in

proper form. In such case the referee is the proper person to sign the bill. This question has been decided by this court a number of times. (*Light v. Kennard*, 11 Neb., 129; *Turner v. Turner*, 12 Id., 161; *Gillespie v. Brown*, 16 Id., 457.) The bill therefore is properly signed and certified.

As no exceptions were taken to the report, the parties are presumed to be satisfied with it, and the only question for consideration is the law as applied by the court. The court below allowed the items of $917.11 and $4,927.68 upon what are known as the Woodworth contracts for stone, and these are the only items of which the defendants complain. As to the first item it is sufficient to say that the parties agreed after the report was filed that it was a subsisting debt and objections to it were in effect withdrawn. This being so, the objections to it will not be further considered. As to the item of $4,927.68 the defense, as we understand it, is that the contract was void, being against public policy. The rule no doubt is that any agreement entered into by parties for the purpose of preventing competition in the letting of public contracts is void; and a like rule obtains where the necessary tendency or effect of the contract would be to stifle competition. To have this effect, however, it must appear that the intent, effect, or necessary tendency of the contract was to stifle competition. (*Breslin v. Brown*, 24 O. St., 565.) In other words, in considering a contract, " it is not to be forgotten that you are not to extend arbitrarily those rules which say that a given contract is void as being against public policy, because if there is one thing which more than another public policy requires, it is that men of full age and competent understanding shall have the utmost liberty in contracting and that their contracts, where entered into freely and voluntarily, shall be held sacred and shall be enforced in courts of justice. Therefore you have this paramount public policy to consider that you are not lightly to interfere with this freedom of contract." (Jessel, M. R., in *Print-*

*ing, etc., Co. v. Sampson*, 19 Eq. L. R. [Eng.], 462–5; 3
Am. & Eng. Ency. of Law, 875–6.) Substantially the
same views were expressed by Cole, J., in *Richmond v. R.
Co.*, 26 Ia , 191. The same rule is stated in *Kellogg v.
Larkin*, 3 Pinney [Wis.], 123, and *Swann v. Swann*, 21
Fed. Rep. [Ark.], 299. The finding of facts do not estab-
lish the invalidity of the contract in question, and, there-
fore, it is unnecessary to consider the further question
whether or not an action would lie in any event between
these parties for an accounting. It is evident that sub-
stantial justice has been done by the judgment of the court
below, and it is affirmed. If complaint is made as to the
taxation of the costs the remedy is a motion for retaxation
of the same.

AFFIRMED.

THE other judges concur.