WHALEN ET AL., RESPONDENTS, v. HARRISON, APPELLANT.

(No. 1,302.)

(Submitted November 19, 1901. Decided February 24, 1902.)

*Contracts — Public Policy—Public Buildings — Competitive Biddings—Appeal—Bill of Exceptions—Time of Filing— Directing Verdict—Nonsuit.*

1.   It is not error for the court to deny a motion for a continuance on account of the absence of the defendant, where the defendant fails to show diligence.

2. Where, in a suit on an alleged contract, plaintiff alone testifies in support of his case, and his evidence, though uncontroverted, is confusing, it is error to direct a verdict for him, as the jury should determine the weight of his testimony, and the amount, if any, which is due to plaintiff under proper instructions of the court.

3. Under Code of Civil Procedure, Sec. 1736, providing that on appeal from a final judgment any statement used on a motion for a new trial may be used equally as on appeal from an order granting or refusing a new trial, a bill of exceptions used on motion for new trial may be used on appeal from the judgment, though no appeal is taken from the order denying the motion.

4. Under Code of Civil Procedure, Sec. 1173, providing that, when a motion for new trial is made on a bill of exceptions, the party shall have the same time, after service of the notice of intention to move for a new trial, to serve such bill, as is provided after entry of judgment by Section 1155,— that is, 10 days,—and 10 days after service of such notice to serve a statement of the case, and in either case the judge may extend the time for 30 days in addition to the statutory time, where a judgment is entered on June 9th, notice of intention to move for new trial is served on the 16th, and on the 25th the judge extends the time to serve the bill of exceptions to July 26th, the service of the bill on July 24th is in time, and it may be used on appeal from the judgment.

5. Where bidders for a school building, after the rejection of their separate bids and consultation with the members of the board, agree to reduce their bids, and that in consideration of a bonus part of the bidders would let another have the contract for furnishing stone, pursuant to which they procure the contract without readvertisement, such agreement is void, as against public policy, and affords no basis for an action by one of such bidders against the other.

6. Evidence reviewed and *held,* that the court erred in denying a motion for nonsuit on the ground that the contract sued upon was void as against public policy.

*Appeal from District Court, Lewis and Clarke County; S. H. McIntire, Judge.*

ACTION by Stephen F. Whalen and James S. Grant, partners as Whalen & Grant, against William Harrison. From a judgment in favor of plaintiffs, defendant appeals. Reversed.

*Messrs. Walsh & Newman* and *Mr. A. J. Craven,* for Appellant.

The demurrer to the first cause of action should have been sustained. The objection to the introduction of tetstimony on the first cause of action should have been sustained. These two propositions involve the same question, viz.: That the complaint does not state facts sufficient to constitute a cause of action. (*Cummer* v. *Butts,* 40 Mich. 322; *Ahlstrom* v.

*Fitzpatrick,* 17 Mont. 295; *Davie* v. *Lumberman's Mining Co.,* 93 Mich. 491, 53 N. W. 625; *Ex parte Baxter,* 2 Q. B. 478, 1892; Storey on Contracts, 5th Ed., Sec. 830; Addison on Contracts, bottom p. 292-296; 5 Lawson's R. & R. Sec. 2313; *King* v. *Ruickman,* 20 N. J. E. 316; *Abeel* v. *Radcliff,* 13 Johns. 216; *Van Slyke* v. *Broadway Ins. Co.,* 115 Cal. 644, 47 Pac. 689; *Ducie* v. *Ford,* 8 Mont. 233, 240; *Ryan* v. *Dunphy,* 4 Mont. 354; *Mayger* v. *Cruse,* 5 Mont. 497.)

The court erred in striking out that part of the answer setting forth that the alleged contract was not made, delivered or intended by the parties to be a final contract, or as containing all the stipulations and agreements intended by the parties. (Code of Civil Procedure, Secs. 3132, 628; *Commercial Telegram Co.* v. *Smith,* 47 Hun. 494; *Burke* v. *DuLaney,* 153 U. S. 228; *Ware* v. *Allen,* 128 U. S. 590; Wharton on Contracts, Sec. 202; Wharton on Evidence, Sec. 927.)

The alleged contract is against public policy and illegal, null and void. (*Hannah* v. *Fife,* 27 Mich. 172; *Hunter* v. *Pfeifer,* 9 Northeast, 124, 108 Ind. 197; *McMullan* v. *Hoffman,* 69 Fed. 509; *Hoffman* v. *McMullan,* 83 Fed. 372; *Boyle* v. *Adams,* 52 N. W. 860; *Moore* v. *Bennett,* 29 N. E. 888; *Bank* v. *Holm,* 71 Fed. 489; *Church* v. *Proctor,* 66 Fed. 240; *Sharp* v. *Wright,* 35 Barbour, 236; *Gulick* v. *Ward,* 18 Am. Dec. 389; *Pac. Factor Co.* v. *Adler,* 90 Cal. 110; *Morrison* v. *Bennett,* 20 Mont. 560; *Atcheson* v. *Mallon,* 43 N. Y. 147; *Tool Co.* v. *Norris,* 2 Wall. 45; *Swan* v. *Chorpening,* 20 Cal. 182; *Brooke* v. *Cooper,* 21 L. R. A. 617; Greenhood on Public Policy, 178, 179.)

It is the duty of the court whenever and however the illegality of a contract appears, to dismiss the suit, although the question may not be raised by the pleadings, and both parties waive the illegality. (*Wight* v. *Rindskoff,* 43 Wis. 344; *Oscanyon* v. *Winchester Arms Co.,* 18 Fed. Case 863, No. 10,600; Same case affirmed, 103 U. S. 261; *Hall* v. *Coppell,* 7 Wallace, 542; *Maguire* v. *Corwin,* 101 U. S. 108.)

The court erred in instructing the jury to return a verdict

in favor of the plaintiffs. In this the court invaded the province of the jury. The jury were the sole judges of the weight of testimony and the credibility of witnesses. The court may instruct a jury to return a verdict where the court can say as a question of law that there is no evidence to sustain a controverted allegation; but where an issue of fact is raised in an action at law, and a jury is impaneled to try that issue, the jury, and not the court, must judge of the credibility of the witnesses and the weight of the evidence. (Sec. 23, Art. III, Constitution of Montana; Code of Civil Procedure, Secs. 1080-3390; *Wastel* v. *M. U. Ry. Co.,* 17 Mont. 213; *Knowles* v. *Nixon,* 17 Mont. 473; *Saor* v. *Fuller,* 71 Iowa, 425; *Rhodes* v. *Lowry,* 54 Ala. 4; *Stewart* v. *Russell,* 38 Ala. 619; *Bank* v. *Donaldson,* 6 Penn. St. 179; *King* v. *Kline,* 6 Penn. St. 318; *People* v. *Webster,* 111 Cal. 381.)

*Mr. William Wallace, Jr.,* for Respondents.

A bill of exceptions not served within ten days after the judgment will not be considered on appeal from judgment. (Sec. 1155, Code of Civil Procedure; 3 Enc. Pl. & Pr. pp. 459, 460; Hayne New. Trial & App. Sec. 257, p. 769; Sec. 250, p. 753.) Here notice of motion for a new trial was served on the eighth day after verdict and seventh after judgment, and the bill therefore settled in time for new trial proceedings, but too late for simple judgment appeal. *Quaere*: Does Section 1736, Code of Civil Procedure, providing that "any statement used on motion for new trial may be used on appeal from final judgment," etc., make this bill of exception part of the record for purposes of a judgment appeal; or, to become so, must it have been prepared within ten days, or within an extension period, under order made within ten days after judgment? (The new trial proceedings were not prosecuted beyond the district court.)

But for Section 1736 a separate bill would be required on the two appeals. The object of the section clearly was to do

away with double sets of papers. It was not intended to permit a person, after losing a right to make a bill of exceptions on appeal, to gain it again under pretense of following up motion for new trial proceedings. The proceedings are separate, and only by virtue of the statute can the bill of exceptions in one be used in the other. The defendant could have preserved his rights along both lines by taking an extension of time to prepare the bill within ten days after the judgment. Then the bill would have been in time for either an appeal from the judgment or an order overruling a motion for new trial, and, by virtue of Section 1736, could be used for both purposes without being twice copied in the record. But when defendant allowed the ten days after judgment to go by without preparing the bill or getting an extension order, he lost the right to have any bill of exceptions in connection with the appeal from the judgment, and could not use any other bill therefor not prepared in time for this purpose. (*People* v. *Crane,* 60 Cal. 279, 280.) He could not have had this bill of exceptions settled after the time to appeal from an order overruling a motion for new trial if the motion had been heard on affidavits. (*Turner* v. *Hearst,* 115 Cal. 399.)

There was in the one instrument a general demurrer to each of the two causes of action. The court's ruling was general on the whole demurrer; and there was only a general exception to this general ruling, and a general specification of error. If, then, the demurrer was properly overruled as to either cause of action, the exception fails. (*Kleinschmidt* v. *Iler,* 6 Mont. 122; 8 Enc. Pl. & Pr. 167, note 7 and cases.)

The interpretation of this contract is for the court, which, to place itself in the parties' position, must consider all the circumstances under which it was made, including the situation of the subject matter, and the parties. (Sec. 3136, Code of Civil Procedure, a continuation of Sec. 632, Compiled Statutes.) And "Where technical terms are used in a written agreement, or abbreviations, parol evidence is admissible to show their meaning." (Beach on Contracts, Sec. 581 and

cases; *Newell* v. *Nicholson,* 17 Mont. 389 (43 Pac. 181);
Sec. 3137, C. C. Proc., a continuation of Sec. 633, Comp.
Stat.)

"It is proper here to state that a greater degree of certainty
is required in the terms of an agreement, which is to be spe-
cifically executed in equity, than is necessary in a contract
which is to be the basis of an action at law for damages. The
action at law is founded upon the mere non-performance by
the defendant, and the negative conclusion can often be estab-
lished without determining all the terms of the agreement with
exactness." (Note I to Sec. 72, Beach on Mod. Law of Contr.)
"Where the contract is not expressed in precise terms, the
facts and circumstances surrounding the subject matter it con-
tains may be looked to in aid of construction; and the acts of
the parties to the instrument are entitled to great weight."
(*Cartwright* v. *Calloway Co.,* 10 Mo. 663, quoted in Beach on
Mod. Law of Cont. Sec. 73, note 4; 11 Am. & Eng. Enc. Law,
pp. 512, 513.)

The doctrine of the authorities on the subject of uncertainty
may be epitomized thus: If the court, by traversing the entire
field within which it may pursue its investigations, *i. e.,* the
circumstances under which the instrument was made, the facts
and circumstances surrounding its subject matter at the time,
and the situation and surroundings of the parties, can give
meaning to the words employed, it is bound to do so; and it is
only when, after exhausting all its legal resources, it finds an
instrument on its hands that remains unintelligible, it will re-
fuse to enforce it as a contract.

Again, such an agreement was not within the Statute of
Frauds. So, if appellant were correct, and the instrument
pleaded in paragraph 8 were no contract, we would not be with-
out a remedy, if our pleading otherwise set forth the facts en-
titling us thereto, (for, of course, limitation would have long
since cut off the right to file another complaint). (Beach on
Mod. Law Cont. Sec. 73 foot.) It was not permissible for
defendant to allege or prove matters to destroy this contract

in the face of the contract itself. (*Bank* v. *Stone,,* 59 Cal. 183; *Worrall* v. *Munn,* 5 N. Y. 229, 238; *Cocks* v. *Barker,* 49 N. Y. 107, 110; Beach on Modern Law of Contracts, Sec. 64, note 2, pages 82-85.)

The contract was not void as against public policy. All the cases cited by counsel for appellant are those of agreements made *before* the bidding. Here it was never disputed by defendant, either in pleading or in proof, but that the bids had all been received by the board under their advertisement, and acted on, before this particular contract was even thought of. (*Whalen* v. *Brennan,* 51 N. W. 759; *Flanders* v. *Wood,* 18 S. W. 572; *Breslin* v. *Brown,* 24 Ohio St. 565, 570; Greenhood on Public Pol. p. 181; *Briggs* v. *Tillotson,* 8 Johns. 304, 305.)

On the instruction to jury to render verdict for plaintiff, see *Thompson* v. *McConnell,* 107 Fed. 33, 40, foot; *Arthur* v. *Jacoby,* 103 U. S. 678; *Singer Co.* v. *Hester,* 6 Fed. 804, 808 top; *Pierce* v. *Canada, etc. Ry.,* 22 Mont. 448, foot, 56 Pac. 868, right, and cases cited; *Laidlaw* v. *Sage,* 52 N. E. 686, left top; *Griswold* v. *Boley,* 1 Mont. 546, 10 Mont. 563; *N. P.* v. Sullivan, 53 Fed. 222, and cases; *N. P. R. R.* v. *Bank,* 123 U. S. 727, 733; *Delaware R. Co.* v. *Converse,* 139 U. S. 469; Many cases in Vol. 8, Notes U. S. Sup. Ct. Reports, page 505, under "Trial," p. 506; *Fagundes* v. *C. P. R. R.,* 21 Pac. 437, 438 (Cal.).

Reply Brief of Appellant:

Counsel for the Respondents, in his brief, suggests a question of practice, which, he says, has never been adjudicated. In our opinion, the question has been fully settled by the Code and by the decisions of the supreme court. The California decisions, which he cites, are not authority on the proposition, because there is a difference between the California Code and our Code. Our Code dispenses with the bill of exceptions and says, in plain, unmistakable language, that none is required. (Code of Civil Procedure, Sec. 1151.) Section 1155 of the

Code of Civil Procedure, cited by counsel for respondents, expressly applies to exceptions taken at the trial, and not to exceptions deemed to have been taken. In order to make the matter more emphatic, and to leave no room for discussion as to whether or not a bill of exceptions shall be required for matters deemed excepted to, Subdivision II of Section 1196 of the Code of Civil Procedure, defines what shall constitute the judgment roll in cases where the defendant has appeared. (*Kleinschmidt* v. *McDermott,* 12 Mont. 315; *Sanderson* v. *Billings Water Power Co.,* 19 Mont. 238; *New Orleans R. R. Co.* v. *Albritton,* 75 Am. Dec. 98; *Wastl* v. *Montana U. Ry. Co.,* 61 Pac. 9.) But, independent of the provisions of the Code, if there was no bill of exceptions, the court could review the action of the lower court, in striking out a part of the answer. (*Dodson* v. *Nevitt,* 5 Mont. 518, and *Bank of Commerce* v. *Fuqua,* 11 Mont. 285-293; *Power* v. *Gumm,* 6 Mont. 5; *Barber* v. *Briscoe,* 8 Mont. 222; *Jones* v. *City of Petaluma,* 36 Cal. 230; *Smith* v. *Lawrence,* 38 Cal. 28.)

We may go even further and say that if the court could not review the action of the lower court, in striking out these matters, without a bill of exceptions settled, as counsel contends it should be settled, yet in this case, the whole matter is brought up for review by the motion for nonsuit, upon the ground that the testimony shows that the contract was against public policy and void. Had the defendant's rights been lost on the preliminary proceeding upon this question, they would have been preserved by that motion. We contend, however, that the bill of exceptions and statement was served in time. A motion for a new trial brings the whole matter before the court for review. It matters not whether the case is tried at one session of the court or at various sessions. From the commencement until the final disposition of the case in court, there is but one trial. There are trials of the issues of the law, and of the issues of fact. (Code of Civil Procedure, Secs. 1030, 1031, 1032 and 1033.)

An error, occurring upon a ruling on the pleadings, although

made long before the trial of the case upon the merits, is an error occurring at the trial. In this case notice of intention to move for a new trial was served in due time, the time for settling the bill of exceptions was extended by an order of the court, and the statement and bill of exceptions was served within the time granted by the court. (Section 1173 of the Code of Civil Procedure.)

Upon the illegality of the contract, we wish to add to our former brief the case of *Hoffman* v. *McMillan,* 83 Fed. 372, reversing *McMillan* v. *Hoffman,* 75 Fed. 547, and see same case cited in our former brief, 69 Fed. 509.

MR. JUSTICE MILBURN delivered the opinion of the court.

This case is prosecuted by the plaintiffs upon two causes of action, one being to recover $1,333.50 and interest, claimed to be due upon an alleged contract, set forth in the complaint.

It is alleged by the plaintiffs, in substance, that the defendant made a proposition to the board of school trustees of school district No. 1, at the city of Helena, to furnish and deliver all cut, carved, and rubble stone for the Helena High School Building for $22,598, which bid was rejected; that plaintiffs made a bid to the said board to erect the building and furnish all labor and materials for $63,100, and defendant offered to furnish to plaintiffs all sandstone for $19,000, and all rubble granite at $1.45 per perch, and on this basis plaintiffs made their bid; that this offer was rejected by the board because another had offered to erect the building for $63,050, and the board asked plaintiffs to reduce their bid below $63,050; that they could not do so without sustaining financial loss, unless they obtained the granite and sandstone for $19,000; that, to induce the plaintiffs to agree to construct the building and furnish the rest of the materials for $40,152, the defendant agreed to contract with the board to furnish all cut stone and rubble granite for $22,248, and, in consideration that plaintiffs would construct the building and furnish all the rest of the materials

for $40,152, and use the stone furnished by defendant, he would pay them the difference between $19,000 plus $350, and $22,248, which difference amounted to $2,898; that thereupon the defendant contracted with the school board to furnish said cut stone and rubble granite for $22,248, and that plaintiffs thereupon agreed to furnish all the rest of the material and construct the building for $40,152; that defendant furnished the stone, and received from the school board $22,248, and plaintiffs accepted the stone, and constructed the building according to their contract; that defendant thereby became indebted to plaintiffs in the sum of $2,898, less a credit for 850 perches of granite, amounting to $1,232, leaving a balance due of $1,665.50; and that other credits were allowed, which reduced the amount claimed to $1,335.50. It is then alleged that the contract was reduced to writing, and is set forth in the complaint as follows:

"HELENA, MONTANA, July 31st, 1890.

"Memo. of agreement and understanding pending execution of contract on the basis hereof:

| | |
|---|---:|
| Whalen & Grant's bid H. S. S. | $63,100 00 |
| They agree to dis | 350 00 |
| | $62,750 00 |
| William Harrison's bid | $22,598 00 |
| He agrees to dis | 350 00 |
| | $22,248 00 |
| Building to cost around | $63,100 00 |
| Less $350.00x2 | 700 00 |
| | $62,400 00 |

"William Harrison agreed to furnish W. & G. cut stone for $19,000.00, which they agreed to accept. Wm. Harrison will receive from school committee $22,248.00. This figure including an estimate on the rubble (granite). W. & G. are entitled from Wm. Harrison to the difference between $19,000 plus $350.00, above shown disc., and $22,248.00, which sum is $2,898.00; said Whalen & Grant having to furnish granite rubble for H. S. S., which Wm. Harrison agrees to deliver

f. o. b. N. P. R. R. for $1.45 per perch of 2,240 pounds. The above is our understanding and agreement.

"WM. HARRISON,

"STEPHEN F. WHALEN,

"JAMES S. GRANT."

Their second cause of action is set forth, claiming a balance due for work and labor amounting to $188.95.

The defendant demurred to each cause of action for want of substance. The demurrer was overruled. The defendant thereupon answered denying each and every allegation in the complaint. It is not necessary to state anything further contained in the answer.

There is no serious attack made upon the judgment, so far as the second cause of action is concerned, and we find no error as to it except as appears hereinafter.

A motion having been made for a continuance on account of the absence of the defendant, we find that the court did not err in denying it, as the defendant, in our opinion, did not show diligence.

A motion for a nonsuit was made after plaintiffs submitted their case, and the same was denied. Thereupon the defendant offered no testimony, and the court, on motion of plaintiffs, directed a verdict for the plaintiffs upon both causes of action. In thus directing a verdict the court erred. There was only one witness,—plaintiff Whalen,—and he was a largely interested party, who was cross-examined at length, and whose testimony was not clear, but somewhat confusing. Under the circumstances of this particular case, we think that the court should not have taken up the duty of the jury, but should have left it to them to determine the weight to be given to his evidence, and the amount, if any, which was due to the plaintiffs under proper instructions of the court.

The plaintiffs make the point that the bill of exceptions used on motion for new trial, not having been submitted within ten days after the judgment was rendered, therefore cannot be used on appeal from the judgment. No appeal was taken from the

order which was made denying the motion for a new trial. Counsel inquires whether any statement used on motion for new trial can be used under Section 1736 of the Code of Civil Procedure, if the new trial proceedings be not prosecuted beyond the district court. This section is as follows: "On an appeal from a final judgment, the appellant must furnish the court with a copy of the notice of appeal, of the judgment roll, and of any bill of exceptions or statement in the case, upon which the appellant relies. Any statement used on motion for a new trial may be used on appeal from a final judgment equally as upon appeal from the order granting or refusing a new trial." Under the language of this section we cannot see any reason why the bill of exceptions in this case may not be used on appeal from the judgment. The record was made within the time fixed, and while the facts were fresh in the mind of the judge; and, the purpose of the section being to prevent multiplication of the records, and this object having been attained, we cannot see any reason why such bill of exceptions may not be used on appeal from the judgment for all purposes for which a bill of exceptions may be properly used on appeal from the judgment.

Having made the inquiry above referred to, counsel proceeds to argue that the bill of exceptions was not served in time; that is, within ten days after entry of judgment. But, as is well said by counsel for appellant, Section 1173 of the Code of Civil Procedure provides that, when a motion for a new trial is made upon a bill of exceptions, the party shall have the same time after service of the notice of intention to move for a new trial to serve his bill of exceptions, as is provided after entry of judgment by Section 1155, and he shall have ten days after service of such notice to serve a statement of the case, and in either case the judge may extend the time not more than thirty days in addition to the statutory time. Judgment was entered June 9, 1897. Notice of intention to move for a new trial was served and filed June 16. On June 25 an order was made by the judge extending the time until July 26 to prepare and

serve bill of exceptions and statement on motion for new trial. Such service was made on July 24. Section 1736, *supra,* certainly, by its plain language, permits such bill of exceptions so saved and used on motion for new trial to be "used on appeal from a final judgment equally as upon appeal from the order granting or refusing a new trial" for all purposes for which a bill of exceptions containing matter which a bill of exceptions may properly present on appeal from the judgment alone may be used. The words "any statement," as used in the section, include a bill of exceptions. We therefore do not consider this point of respondent well taken.

We are of the opinion that the court should have granted the motion for a nonsuit as to the first cause of action, as prayed by defendant's counsel. The testimony of the plaintiff Whalen, after showing that plaintiffs' bid for $63,100 and that of defendant for $22,598, with one of a stranger, were rejected by the board, discloses the fact that plaintiffs and defendant, after the rejection of their separate bids, made pursuant to advertisement of the board, got together for consultation, all the parties hereto having been interviewed by members of the board, who had said that the bids must be reduced or the plan of the building altered. Whalen testifies that: "It seemed that the school board had been talking to Harrison, too, and we spoke to him about it,—that they were going to readvertise for bids, and do something, if they could not get a lower bid,—and asked Harrison what he thought he could do about it; and we told him that we were going to talk with those other parties; and finally he just came right out, and [we] agreed that we would stand $350 if he would stand that, and let it go at that; and, if the school board would stand that, that it was agreeable to us if it was to him." He also testifies that: "We lost the proposition on the first bid, but afterwards, through an agreement, we were awarded the contract on account of agreeing to make this reduction. They intended to readvertise for bids, but they did not do it." Also that: "We had an arrangement with Mr. Harrison whereby he was to refund to us

the difference between $19,000 and the amount that he had previously put in a bid for." Whalen also states in evidence that: "Before we made a bid we had a little conversation with Harrison about furnishing cut stone for this building. We figured like this: If we could get a satisfactory bid, we would use it; if we couldn't, we figured that we could furnish the stone ourselves, and open a quarry; and we had a quarry picked out."

From the foregoing it seems to be very apparent that both the plaintiffs and the defendant were desirous to prevent the board from doing their duty under the law, to-wit, to re-advertise for bids from all who desired to compete; the bids received under the first advertisement having been all rejected, as conclusively appears. Besides this, Whalen and Grant evidently did not wish to be compelled to put in a new bid including prices for stone, thereby competing with Harrison. The plan was to avoid competition, and to deprive the people of any opportunity to possibly secure the construction of the building for less than $62,400.

We think that such a plan as disclosed by the evidence of the plaintiff Whalen is against public policy. The cases in the reports of decisions are many upon this subject, and the weight of authority is in support of the propositions: (1) As between bidders, each bidder must be left free to act according to his own judgment; (2) it is not the results of the agreement, but the object and possible effect thereof, that determines its validity; and (3) any agreement which, in its object or nature, is calculated to diminish competition for the obtainment of a public contract to the detriment of the public, is void. The authorities are so numerous in support of these principles that we forbear to collate them here, but refer to the discussion of this subject in Greenhood on Public Policy, p. 178 *et seq.,* and the cases cited. Our attention has not been called to any opinion or reasoning which conflicts with the views herein expressed.

Respondents refer us to *Briggs* v. *Tillotson,* 8 Johns. 304.

In this case competition was complete, and the contract complained of was made after full competition was established, certain persons competing for bounty for the manufacture of specimens of cloth; the court holding that, if the contract had been made before complete manufacture of the cloth which was to compete, the contract would have been void. This appears to be against respondents, and not in their favor.

They also cite *Whalen* v. *Brennan,* 34 Neb. 129, 51 N. W. 759. But in this case also the law is laid down as we have endeavored to show it to be; for while the court in that case does quote with approval words from another court, to-wit: "You are not to extend arbitrarily those rules which say that a given contract is void as being against public policy, because, if there is one thing which, more than another, public policy requires, it is that men of full age and competent understanding shall have the utmost liberty in contracting, and that their contracts, where entered into freely and voluntarily, shall be held sacred, and shall be enforced in courts of justice,"—language which is broad enough, if good law, to make a contract to murder the president of our nation an enforceable agreement. Still the same court does, as we do, declare that "the rule, no doubt, is that any agreement entered into by parties for the purpose of preventing competition in the letting of public contracts is void; and a like rule obtains where the necessary tendency or effect of the contract would be to stifle competition." This case, therefore, does not support the respondents' contention under the pleadings and the evidence.

The third case brought to our attention by respondents as authority is the case of *Breslin* v. *Brown,* 24 Ohio St. 565, 15 Am. Rep. 627. In the opinion in that case the court uses this language: "The public policy which, it is supposed, avoids this contract, is that which favors fair and honest competition at public sales, and forbids all contracts and combinations between bidders which stifle competition. We unhesitatingly admit the rule to be that any agreement entered into for the purpose of preventing competition at such sales is    *    void.

\* \* \* So, also, any contract the effect of which, or even the necessary tendency of which, is to stifle competition. Such contracts are absolutely void as between the parties thereto, because they are fraudulent as against the seller." This language used in this case cited by respondents certainly does not support their contention, but the contrary.

The fourth supposed authority named by respondents is Greenhood on Public Policy, page 181. This a reference in Greenhood to the case of *Breslin* v. *Brown, supra,* in which the court, although it laid down the law in the words we have quoted, decided the case, under the peculiar facts therein, in favor of the plaintiff, who sued on the alleged void contract; but on the next page of Mr. Greenhood's work (page 182) we find that he disapproves of the said decision as made. Thus we find no authority cited by respondents supporting their views that the contract under consideration is not void.

The fact is that plaintiffs practically said to Harrison this: "We do not wish you again to put in your bid for the stone in opposition to us. If you do, we shall be forced to underbid you, if we can, as we have a quarry selected; and then you may not sell any stone at all. If you will put in a bid, and give us a bonus of so much,—that is, the difference between $19,000 and the face of your bid, $22,248,—we will not bid on the stone at all, and thus you and we will prevent any advertising being done, now that the first advertising has failed; and so we will get this work ourselves in a way not known to the law. You will get your money directly from the board, and we will prevent any bid being made by others for less than $62,400." In reason and upon authority we believe such a contract to be void.

We therefore are of the opinion that the court erred in denying the motion for a nonsuit as to the first cause of action, as the evidence shows the contract to be void for the reasons above stated.

Reversed and remanded for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY: I concur.

MR. JUSTICE PIGOTT: I concur specially. With the holding that the court below did not err in refusing a continuance, I agree. I also agree that the statement and bill of exceptions used on motion for a new trial are properly before us and must be considered on appeal from the judgment. I concur also in the holding that the credibility of the witness Whalen and the weight of his testimony were for the jury, not the court, and that the court erred in directing a verdict for the plaintiffs. For this error the judgment must be reversed. But from the decision that the court below should have nonsuited the plaintiffs in respect of the first cause of action, I respectfully dissent.